UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


BROOKWOOD DEVELOPMENT, LLC                                    PLAINTIFF

V.                                    CIVIL ACTION NO. 3:21-CV-219-KHJ-MTP

CITY OF RIDGELAND, MISSISSIPPI, et al.                        DEFENDANTS


ORDER

Before the Court is Defendants' [230] Motion for Summary Judgment. The

Court grants the motion.[1]

I.      Background

Plaintiff Brookwood Development applied for a conditional-use permit. It

wanted to construct a 130,000-gross-square-foot, four-story climate-controlled

storage facility. Defendants—the City of Ridgeland, its Mayor, and its Board of

Aldermen—denied Brookwood's application. That gave rise to this suit about the

constitutionality of climate-controlled-storage decisionmaking in Ridgeland.

For years, Ridgeland has been concerned about "becoming the dumping place

for the storage of other communities' residents' stuff and 'junk.'" Brookwood Mem.

[237] at 4 (quoting Ramsey Dep. [235-10] at 39:3–39:7). Since 2017, officials have

viewed proposals for more storage facilities as an "insult to Ridgeland" and "not the

type of development [officials] wanted." *Id.* at 3–4 (quoting Smith Dep. [235-11] at

---

[1] The Court denies as moot Plaintiff's [228] Motion to Exclude and [238] Motion to
Strike.

33:24–34:1; McGee Dep. [235-12] at 26:3–26:6). Climate-controlled storage facilities had "evolved into a type of use that ha[d] a very large footprint and typically include[d] multiple stories." 4/3/2018 Zoning Amend. [235-19] at 1. And so, in 2018, the Mayor and Board amended Ridgeland's zoning ordinance to prohibit more climate-controlled storage facilities in one zoning district. *See id.* at 1–2.

The next year, StorageMax applied for a conditional-use permit in a different zoning district. *See* StorageMax Pet. [236-19]. Its proposed location was at the end of a narrow, one-lane road that led to dilapidated houses, next to I-55. *See, e.g.*, Defs.' Mem. [231] at 15; [237] at 5. StorageMax also applied to rezone the property as a Technical Industrial Park District, which is intended for "light industrial" uses. [236-19] at 2–4; Zoning Ordinance [235-1] at 153. The Mayor and Board granted the rezoning request and a conditional-use permit. StorageMax Ordinance [230-26] at 2; 10/15/2019 Mayor & Bd. Minutes [235-22] at 2–3.

Along came Brookwood Development. In June 2020, Brookwood contracted to buy a vacant lot from Drury Development Corporation. *See* Sale Cont. [235-25]. A couple of months later, a Brookwood-affiliated engineer reached out to the City Planner about a proposed storage facility on that vacant lot. *See* Email [236-18] at 7; Gautier Dep. [235-9] at 73:11–73:18. The City Planner responded:

> We do have a few concerns with the building and would like to make you aware before proceeding. Attached you will find the Storage Max building that was granted a Conditional Use permit recently. This project also has interstate frontage on the I-55 corridor. Be aware that [decisionmakers] are likely to expect this level of architecture for any climate controlled storage facility in Ridgeland, especially one located with such prominence as the one proposed. While we are not expecting

a replica of this building, please be aware that this is the standard for which they are comparing any new facilities such as this.

[236-18] at 5.

Brookwood filed a conditional-use application. Its proposed four-story climate-controlled storage facility was more than 130,000 gross square feet. Brookwood Appl. [236-21] at 9. The proposed site was "between two hotels on a narrow island of land between I-55 and Highway 51," about "one mile from" StorageMax. [237] at 13 n.13, 30. That site was in the Highway Commercial District, whose "purpose . . . is to provide an area for highly planned developments that typically require direct auto traffic access and visibility from [U.S.] and Interstate highways." [235-1] at 138. The conditional-use application directed Brookwood to attach a "copy of the written authority of the owner's representative to act on behalf of the Owner." [236-21] at 2. Brookwood instead attached a "Sale Contract." *See id.* at 72−79. And although the application noted that the ordinance "REQUIRED" 133 parking spaces, Brookwood proposed eight. *Id.* at 9.

Ridgeland's ordinance sets forth the standards for assessing conditional-use applications. The ordinance explains that a conditional use is a "land use that would not generally be appropriate in a particular zoning district, but which, with certain restrictions or conditions, would, in the judgment of the Mayor and Board of Aldermen, promote the public health, safety, morals, or general welfare of the City and would not adversely affect adjacent properties." [235-1] at 18; *see also id.* at 167−68 (providing that "discretion is to be exercised" in deciding "whether or not" to grant a conditional use). "After receiving recommendations from the Zoning Board

3

and before granting any conditional use," the Mayor and Board must make a written finding that granting the conditional use "will not adversely affect the public interest." *Id.* at 169−70. The Mayor and Board "shall not" grant a conditional use unless they find, among other things, that the proposal would:

- "not be detrimental to the public health, safety, or general welfare";
- "not be detrimental to the economic welfare of the city"; and
- "not depreciate property values."

*Id.* The ordinance then provides that "Conditional Use approval must be issued upon certain conditions, such that if the Mayor and Board of Aldermen find that an applicant meets the requisite standards specified in the Ordinance, the Conditional Use permit must be allowed." *Id.* at 173.

The Zoning Board first took up Brookwood's application. Brookwood received two public hearings. *See* 12/17/2020 Zoning Bd. Minutes [236-5] at 2−4; 2/4/2021 Zoning Bd. Minutes [236-8] at 2−3; *see also* Brookwood Presentation Outline [241-3]. After the second hearing, the Zoning Board recommended approval by a three-to-two vote. [236-8] at 2−3. Brookwood then presented its proposal to the Architectural Review Board, which approved it. 2/9/2021 ARB Minutes [236-11] at 2.

The application then went to the Mayor and Board. Before voting on the application, though, the Mayor and Board took up a Resolution imposing a temporary moratorium on climate-controlled storage facilities. *See* 2/16/2021 Mayor & Bd. Minutes [230-10] at 1. The February 2021 moratorium provided that, for six months, "no indoor/climate-controlled storage facilities shall be permitted or placed on the properly zoned areas unless the same is specifically permitted." Moratorium

Resol. [236-13] at 2. The Resolution explained that it was "intended and designed to . . . maintain the status quo until the matter could be further studied." *Id.* at 1. And so the Resolution directed "Community Development . . . to prepare a map of existing indoor/climate-controlled storage facilities and other potential locations of such facilities and prepare a Zoning Ordinance Amendment that addresses the impacts of [those] facilities on a community." *Id.*

Following that study, the Mayor and Board issued an amendment, which took effect a month later. 4/4/2021 Zoning Amend. [230-18] at 1–2. The amendment declared, among other things, that facilities shall "NOT be located within 2,000 linear feet from any other existing" facility. *Id.* at 2. The amendment reiterated the City's concern about overconcentration of storage facilities. *See id.* at 1.

The Mayor and Board denied Brookwood's conditional-use application that same day. Brookwood Resol. [230-19]. They explained their reasons, including that:

- "Petitioner failed to provide a copy of the written authority of the owner's representative to act on behalf of the Owner."
- "Petitioner has not shown that the establishment of the Conditional Use will not be detrimental to public welfare of the citizens of Ridgeland. Absorbing the storage needs for areas outside of the City of Ridgeland should not be the burden for Ridgeland. Losing valuable real estate for other more needed land uses in the future will be the result if the Conditional Use Permit is granted."
- "The approval of the Conditional Use Petition can cause a depreciation in property values of the neighboring hotel properties due to the fact that the use does not offer any supporting needs for visitors that will utilize the hotels."

*See id.* at 1–3. Brookwood exercised its right to appeal the decision in state court, but it chose to voluntarily dismiss its appeal. *See* [235-1] at 192; Piper Dep. Vol. I [235-23] at 114:2–114:7; Scruggs Dep. [236-14] at 90:7–91:5.

Brookwood filed this suit in April 2021. Compl. [1]. It then filed two amended complaints. [16]; [58]. Brookwood presses two substantive-due-process claims, one equal-protection claim, and three procedural-due-process claims. *See* [58] ¶¶ 80−138. Limited to Brookwood's factual allegations, the Court allowed all six claims to move forward against the City of Ridgeland at the motion-to-dismiss stage. *See* Order [70] at 18; Order [76] at 4. The Court also allowed some claims to move forward against the individual Defendants in their individual capacities. *See id.*

Following extensive discovery, Defendants moved for summary judgment. [230]. The parties' evidence includes 85 attached exhibits, amounting to more than 1,400 pages. *See id.*; Brookwood Resp. [235]; Brookwood Additional Exs. [236]; Defs.' Reply [241]. The Court now turns to Defendants' Motion for Summary Judgment.[2]

II.    Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' while a dispute about that fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (quotation omitted). A movant is "entitled to a judgment as a matter of law [when] the nonmoving party has failed to make a sufficient showing on an essential

---

[2] Brookwood also moved to exclude Defendants' proposed expert under Federal Rule of Evidence 702. [228]. Brookwood then moved to strike Ridgeland's Public Works Director's testimony as "undesignated expert opinions." [238]. The Court denies both motions as moot.

element of [its] case with respect to which [it] has the burden of proof." *Carnegie Techs., LLC v. Triller, Inc.*, 39 F.4th 288, 293 (5th Cir. 2022) (quotation omitted).

"If the burden at trial rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case." *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010) (quotation omitted). "Once a party meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Id.* The Court "must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). But the non-movant must present more than "speculation, improbable inferences, or unsubstantiated assertions." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quotation omitted). The non-movant's failure "to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

III.    Analysis

"[R]eview of municipal zoning is within the domain of the states, the business of their own legislatures, agencies, and judiciaries, and should seldom be the concern of federal courts." *Shelton v. City of Coll. Station*, 780 F.2d 475, 477 (5th Cir. 1986). And so the Fifth Circuit has "repeatedly demonstrated its reluctance to accord constitutional status to local zoning disputes." *Rainwaters v. Jackson Cnty.*

*Bd. of Supervisors*, 1993 WL 481561, at *3 (5th Cir. Nov. 1, 1993) (unpublished) (collecting cases).[3]

Against that backdrop, Brookwood raises two substantive-due-process claims, one equal-protection claim, and three procedural-due-process claims. Each claim fails at each essential element. Summary judgment is proper as to all six claims.

## A. Substantive Due Process

Brookwood presses two substantive-due-process claims. One arises from Ridgeland's moratorium. [58] ¶¶ 80−90. The other arises from Ridgeland's alleged "reverse spot zoning." *Id.* ¶¶ 91−99.

A substantive-due-process plaintiff must (1) allege a constitutional deprivation and (2) show that the government action is not "rationally related to a legitimate governmental interest." *Cripps v. La. Dep't of Agric. & Forestry*, 819 F.3d 221, 232 (5th Cir. 2016) (quotation omitted). But Brookwood has no protected property interest in receiving a conditional-use permit. And even if it did, it would lose under rational-basis review. Summary judgment is proper as to both claims.

### 1. Property Interest

"The hallmark of property . . . is an individual entitlement grounded in state law." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982). A property interest

---

[3] That is, federal courts are not "zoning boards of appeals." *Id.* (quotation omitted); *accord Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 44−45 (1st Cir. 1992); *RRI Realty Corp. v. Inc. Vill. of Southampton*, 870 F.2d 911, 914 (2d Cir. 1989); *United Artists Theatre Cir. v. Twp. of Warrington*, 316 F.3d 392, 402 (3d Cir. 2003); *Scott v. Greenville Cnty.*, 716 F.2d 1409, 1419 (4th Cir. 1983); *Gen. Auto Serv. Station v. City of Chi.*, 526 F.3d 991, 1000 (7th Cir. 2008); *Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara*, 344 F.3d 822, 826 (9th Cir. 2003); *Gunkel v. City of Emporia*, 835 F.2d 1302, 1305 (10th Cir. 1987); *Mackenzie v. City of Rockledge*, 920 F.2d 1554, 1558 (11th Cir. 1991).

requires a "legitimate claim of entitlement," not just a "unilateral expectation." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005); *see also Hampton Co. Nat'l Sur., LLC v. Tunica Cnty.*, 543 F.3d 221, 226 (5th Cir. 2008) ("No discretion in the official and a reasonable expectation in the citizen are central elements."). A permit applicant has a legitimate claim of entitlement "only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured." *Robinson v. City of Baton Rouge*, No. 13-CV-375, 2016 WL 6211276, at *19 (M.D. La. Oct. 22, 2016) (quoting *RRI Realty*, 870 F.2d at 918).[4]

Brookwood claims a protected property interest in "receiving a conditional use permit." [237] at 15. Brookwood says that both Ridgeland's ordinance and Mississippi law create that interest. *Id.* Neither does.

Ridgeland's Ordinance

Brookwood's ordinance-based argument fails for three separate reasons: Brookwood's incomplete application, Ridgeland's discretionary ordinance, and Brookwood's failure to comply with a determinate ordinance requirement.

First, Brookwood failed to submit a "proper application." *Robinson*, 2016 WL 6211276, at *19 (quotation omitted). The application directed Brookwood to attach a "copy of the written authority of the owner's representative to act on behalf of the

---

[4] *See also, e.g.*, *Gardner v. City of Balt. Mayor & City Council*, 969 F.2d 63, 68 (4th Cir. 1992) ("Any significant discretion . . . defeats the claim of a property interest.").

Owner." [236-21] at 2. Brookwood did not do so. Instead, it attached a "Sale Contract." *See id.* at 72–79.

In a single sentence, Brookwood submits that it did attach the necessary written authority. *See* [237] at 24. But its two record citations show otherwise. *See id.* Brookwood first cites the entire contract, rather than any particular provision supplying the necessary authority. *See id.* No such provision exists. *See* [236-21] at 72–79.[5] Brookwood then cites a truncated portion of its own employee's deposition. *See* [237] at 24. But when asked to identify where the contract provided the necessary authority, that employee said:

> Well, in section five it says—it mentions: If purchaser is unable to obtain approval of the site plan and subdivision plat from the applicable government authorities, purchaser shall have the right to terminate, blah, blah, blah. So does it exactly say conditional use, no. . . . I don't think it says it anywhere else in the contract.

[235-23] at 59:1–59:15.[6] Brookwood did not attach a "copy of the written authority of the owner's representative to act on behalf of the Owner." [236-21] at 2. It has no protected property interest in the approval of its incomplete application.

---

[5] The only arguably relevant provision states that, upon "Seller's prior written [or deemed] approval," "Purchaser shall submit the Site Plan and Subdivision Plan to the applicable governmental authorities for approval." [236-21] at 73. But the contract did not say anything about a conditional-use application, or Brookwood's authority to act on Drury's behalf. Brookwood did not provide confirmation of Drury's written or deemed approval. And Brookwood filed its conditional-use application well after the attached contract's 72-day-maximum deadline for seeking government approval. *See id.* at 8, 73, 76.

[6] Piper also testified that "by virtue of having the purchase agreement in place, we can apply for a conditional use." [235-23] at 19–22. Brookwood cites no legal authority for that proposition, which appears only in a non-lawyer's deposition testimony. *See* [237] at 24. "[C]ourts have consistently held that inadequate briefing results in a waiver of a party's argument." *Wong v. Lighthouse Point, LLC*, No. 4:16-CV-109, 2017 WL 6028356, at *9 (N.D. Miss. Dec. 5, 2017) (quotation omitted). Brookwood has waived any such argument. And even if Brookwood had not, Brookwood apparently attached only the "first iteration" of

Second, the ordinance confers substantial discretion on the Mayor and Board. "No discretion in the official" is a central element of a property interest. *Hampton Co.*, 543 F.3d at 226. Yet the ordinance expressly provides that "discretion is to be exercised." [235-1] at 168. Exercising that discretion, the Mayor and Board decide "whether or not" to grant a proposed use. *Id.* at 167, 173. They must assess, among other things, whether a proposed conditional use would serve the "public interest" and the "public health, safety, or general welfare." *Id.* at 169−70; *see also id.* at 18 ("judgment of the Mayor and Board"). An ordinance entrusting the Mayor and Board to make an open-ended judgment about the "public interest" and "general welfare" does not create a protected property interest.[7]

Brookwood ignores all those provisions and emphasizes another. That provision states: "Conditional Use approval *must* be issued upon certain conditions, such that if the Mayor and Board of Aldermen find that an applicant meets the requisite standards specified in the Ordinance, the Conditional Use permit *must* be allowed." *Id.* at 173 (emphases added). Brookwood emphasizes that the word "must" is "'mandatory language.'" [237] at 16, 21−22 (quoting *Ky. Dep't of Corr. v.*

---

the purchase agreement. [235-23] at 58:9−58:15. What's more, Piper later said that Ridgeland "could have asked for [written authority] well before this" and "could have said our application is not complete and not put it on the agenda at all." *Id.* at 192:11−193:6.

[7] *See, e.g.*, *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 59 (2d Cir. 1985) (no property interest where license turned on public "health, safety and general welfare"); *Doyle v. City of Medford*, 606 F.3d 667, 673−74 (9th Cir. 2010) ("[A] statute containing several open-ended criteria, as well as one that looked to 'other factors of public interest,' did not contain 'particularized standards' that significantly constrained discretion."); *Bayview–Lofberg's Inc. v. City of Milwaukee*, 905 F.2d 142, 145−46 (7th Cir. 1990) (no property interest where license turned on "other factors which reasonably relate to the public health, safety and welfare").

*Thompson*, 490 U.S. 454, 464 n.4 (1989)). So, the argument goes, the Mayor and Board had "no discretion to deny" the application. *See id.* at 21.

That argument mistakes a necessary condition for a sufficient one. A legitimate claim of entitlement requires *both* (1) particularized substantive predicates that "limit discretion" *and* (2) mandatory language. *See Thompson*, 490 U.S. at 463−64; *see also, e.g.*, *Valdez v. Rosenbaum*, 302 F.3d 1039, 1044 (9th Cir. 2002) (discussing those "two requirements"). The word "must" alone does not implicate the Due Process Clause.

Here, Ridgeland "must" approve an application only after finding that an applicant meets the highly discretionary "standards specified in the Ordinance." [235-1] at 173. Put differently, "discretion is to be exercised" in making a subjective determination of "whether or not" to approve an application in the name of the "public interest" and "general welfare." *Id.* at 167−70, 173. Because the Mayor and Board retain substantial discretion, Brookwood lacks a "legitimate claim of entitlement" to receive a permit. *Roth*, 408 U.S. at 577.[8] For that reason, too, the ordinance creates no constitutionally protected property interest.

And third, Brookwood's application ran afoul of even the ordinance's determinate, objective criteria. The ordinance sets forth "strict parking requirements." [235-1] at 50−51. Brookwood's application noted that the ordinance

---

[8] As Brookwood's expert put the point, because the ordinance's requirements are "fairly subjective," applicants "don't know what the judgment is going to be until they finally get before the Board." [236-14] at 62:18−62:24; *see also id.* at 81:18−81:21 ("[I]t goes back to it's a—it's a subjective—I don't want to call it a coin toss, but it's up to the Board."); *id.* at 87:11−87:12 ("Brookwood knew it was a very unpredictable process.").

"REQUIRED" about 130 parking spaces. [236-21] at 9; *see also* [235-1] at 195 (schedule). Yet Brookwood proposed eight. [236-21] at 4, 9.[9]

Although Brookwood requested a parking adjustment, it had no legitimate claim of entitlement to receive one. Under the ordinance, the Mayor and Board "may" grant an adjustment. [235-1] at 51. Because there is no "mandatory language" requiring the Mayor and Board to grant a parking adjustment, Brookwood lacked an entitlement to one. *See Da Vinci Inv., Ltd. P'ship v. City of Arlington*, 747 F. App'x 223, 226 (5th Cir. 2018). Brookwood's application did not satisfy the ordinance's determinate parking requirement, so Brookwood had no "reasonable expectation" of receiving a permit. *Hampton Co.*, 543 F.3d at 226.[10]

In sum, Brookwood's ordinance-based argument fails three times over. Brookwood did not submit a proper application. Even if it had, the Mayor and Board were vested with significant discretion to grant or deny it. And even if they had not been, Brookwood's application failed to comply with a determinate requirement.

---

[9] Brookwood represents that Ridgeland's proposed expert "disclaimed" his statement that the zoning ordinance required 130 parking spaces. [237] at 23. That is untrue. While the expert testified that he had no opinion about the practically "appropriate" number of spaces, he reiterated that the ordinance "required a minimum of 130 parking spaces." Watson Dep. [235-2] at 106:11–108:17. Even Brookwood's expert noted that it did not "adhere[] to the requirement to provide 133 parking spaces." Scruggs Report [236-16] at 8.

[10] Brookwood emphasizes that StorageMax received a parking adjustment. *See* [237] at 7, 30, 33. But StorageMax likewise had no legitimate claim of entitlement to one, given the ordinance's discretionary language. Nor does the City Planner's email create a reasonable expectation of receiving an adjustment. In fact, the City Planner emphasized the general "requirement" of "1 space/1000 sf of gross building size." [236-18] at 6. While he also wrote that StorageMax was "permitted a parking adjustment to allow for 8 parking spaces," he nowhere implied that the Mayor and Board would exercise their discretion in the same way under Brookwood's different circumstances. *See id.* Rather, he noted the general possibility of applying for and receiving a variance under the ordinance. *See id.*

13

Brookwood surely hoped that the Mayor and Board would take up its incomplete application, exercise their discretion to approve the proposed 130,000-gross-square-foot storage facility, and then exercise their discretion again to grant a parking adjustment. But hopes do not give rise to constitutionally protected property interests. *See Roth*, 408 U.S. at 577. Ridgeland's ordinance does not support Brookwood's claim of entitlement to "receiv[e] a conditional use permit." [237] at 15.

Mississippi Law

Nor does Mississippi law create a legitimate claim of entitlement to "receiv[e] a conditional use permit." *Id.*

Brookwood's argument conflates two distinct interests. Brookwood asserts that it was the "equitable owner of the lot under the purchase agreement," which gave Brookwood an "equitable interest" in that lot under Mississippi law. *Id.* at 17; *see also* [58] ¶ 29 ("By virtue of the Sale Contract, Brookwood has a protected property interest" in the "real property."). But that is not the relevant interest. "To have a property interest *in a benefit*," a plaintiff must have a "legitimate claim of entitlement *to it.*" *Roth*, 408 U.S. at 577 (emphases added). The claimed benefit is "receiving a conditional use permit." [237] at 15. So the question is whether the contract created a "legitimate claim of entitlement" to receive that permit.

It plainly did not. Contracting with a private party to buy a vacant lot creates no "reasonable expectation" of receiving a conditional-use permit from the government. *Hampton Co.*, 543 F.3d at 226. Brookwood cites no case for that proposition. *See* [237] at 16–18; *see also* Brookwood Mot. to Dismiss Resp. [67] at

14

21–22. The Court is confident that none exists. Were it otherwise, every purchaser of land would have a constitutionally protected interest in receiving a conditional-use permit—regardless of whether the buyer even applied for one or conformed with the ordinance's requirements for receiving one. Brookwood's argument is especially confounding given this particular contract, which contemplates the possibility that Brookwood may be "unable to obtain approval of the Site Plan and the Subdivision Plat from the applicable governmental authorities." [236-21] at 73. In short, Brookwood has no protected property interest in receiving a conditional-use permit.

2.    Rational Basis

Rational-basis review is a "notoriously deferential standard." *Reyes v. N. Tex. Tollway Auth.*, 861 F.3d 558, 561–62 (5th Cir. 2017). Government action "comports with substantive due process if the action is rationally related to a legitimate government interest." *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996). If the relationship is "at least debatable, there is no substantive due process violation." *Id.* at 175.

The Fifth Circuit has identified "two analytical tracks" for rational-basis review in the zoning context. *Shelton*, 780 F.2d at 479. "A regulatory decision can be legislative or it can be adjudicative, and it will be reviewed differently depending on which category it is placed into." *Id.* Under the legislative model, the Court determines whether there is any "conceivable factual basis" for the decision. *Id.* at 480. Under the adjudicative model, by contrast, the Court determines whether a decision is supported by "adequate evidence found within a defined record." *Id.* at

479. Notably, even the adjudicative model requires only that the decisionmaker "be able to point to a rational basis employed in reaching its decision." *Id.* at 484. "[N]othing requires proof of *the*, as distinguished from *a*, basis of decision." *Id.*[11]

Even if Brookwood had a protected property interest—it does not—both substantive-due-process claims would fail under rational-basis review.

Ridgeland's Moratorium

The moratorium was a legislative act that passes rational-basis review.

Ridgeland's moratorium was a legislative act. Order [57] at 11; [70] at 13.[12] Brookwood concedes that moratoria "generally" are legislative. *See* [237] at 20. And Brookwood admits that this moratorium extended to "any climate-controlled storage facility." Brookwood Mot. to Dismiss Resp. [55] at 6; *see also* [236-13]. Nonetheless, Brookwood argues that this moratorium was adjudicative because it was "'aimed' at Brookwood 'specifically.'" [237] at 20 (quoting *Cnty. Line Joint Venture v. City of Grand Prairie*, 839 F.2d 1142, 1145 (5th Cir. 1988)).[13] That is incorrect. Even if Brookwood's application "provided the entire impetus" behind Ridgeland's generally

---

[11] *See also, e.g.*, *Blue Monkey Bar, LLC v. Jefferson Par.*, No. 10-CV-2947, 2011 WL 1303420, at *5 (E.D. La. Mar. 30, 2011); *Bush v. City of Gulfport*, 454 F. App'x 270, 276 (5th Cir. 2011) (finding "distinction between the adjudicative and legislative analysis" to be "minimal" because court was "provided with an actual reason for the government action").

[12] *See also, e.g.*, *Jackson Ct. Condos., Inc. v. City of New Orleans*, 874 F.2d 1070, 1076 (5th Cir. 1989) ("[T]he moratorium . . . was a legislative decision of broad applicability."); *Schmidt v. Par. of Jefferson*, No. 99-CV-0153, 1999 WL 550207, at *5 (E.D. La. July 27, 1999); *Herrington v. City of Pearl*, 908 F. Supp. 418, 427 (S.D. Miss. 1995).

[13] Brookwood omits the end of the quote: "County Line presented no evidence that the city council aimed the ordinance specifically at County Line *rather than calling for termination of all [specific use permits].*" *Cnty. Line Joint Venture*, 839 F.2d at 1145 (emphasis added). Because (as here) the challenged action was "general in scope," the Fifth Circuit held that it "must apply the legislative model." *Id.* at 1145−46.

applicable moratorium, that would "not transform it into an adjudicative decision." *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 388 (5th Cir. 2001). This moratorium was a legislative decision.

A legitimate government interest supported the moratorium. The Fifth Circuit has explained:

> Interim development controls such as [a temporary] moratorium have been found to play an important role in municipal planning. They aid in "bridging the gap between planning and its implementation into legal measures." They may, as here, be used to preserve the status quo while study of the area and its needs is completed.

*Jackson Ct. Condos.*, 874 F.2d at 1077–78 (quoting *Schafer v. City of New Orleans*, 743 F.2d 1086, 1090 (5th Cir. 1984)). Ridgeland's moratorium sought to "maintain the status quo" pending further study, avoiding potential blight and harm to retail and transportation corridors. [236-13] at 1.

And the moratorium was "rationally related to [that] legitimate government interest." *FM Props.*, 93 F.3d at 174. The moratorium was temporary, lasting for six months. [236-13] at 1–2; *see also Schafer*, 743 F.2d at 1090 (upholding 10.5-month moratorium). It also allowed for facilities where they were "specifically permitted," and it provided for individualized relief based on "undue hardship" or "other good cause." [236-13] at 2. A rational relationship is "at least debatable," so "there is no substantive due process violation." *FM Props.*, 93 F.3d at 175.

Brookwood protests that "the Moratorium was not entered for the 'rational basis' asserted." [237] at 20. But under the legislative model, "evidence that an official was motivated by an illegitimate purpose when he took an action cannot . . .

invalidate the official's action." *Mahone v. Addicks Util. Dist. of Harris Cnty.*, 836
F.2d 921, 934 (5th Cir. 1988). Rather, the Court's inquiry is "very limited—the court
may ask whether there was a conceivable factual basis for the specific decision
made and nothing more." *Id.* (quotation omitted). Here, the Resolution itself
provided a "conceivable factual basis" for Ridgeland's decision, and Brookwood does
not argue otherwise. The moratorium passes rational-basis review.

<u>Denial of Application</u>

The application denial was a legislative act that passes rational-basis review.

The denial was a legislative act. When a decisionmaker is "deciding the best
course for the community," it is making a legislative decision. *Shelton*, 780 F.2d at
480 (denial of a zoning variance was legislative); *see also Mahone*, 836 F.2d at 935
(decision not to annex was legislative because "primary concern [was] whether
annexation would be the best course for the district as a whole, not whether it
would benefit the particular landowner who desired to be annexed"); *Kaplan v.
Clear Lake City Water Auth.*, 794 F.2d 1059, 1064 (5th Cir. 1986) (denial of water
and sewer services to property owner was legislative because agency was "required
to act" in "the best interests of all its customers and the public"). That is so even if a
process has "distinctly adjudicative characteristics" or discretion is "tempered by
statutory criteria." *Mahone*, 836 F.2d at 934−35.

Ridgeland's ordinance requires the Mayor and Board to determine the best
course for the community. It states that "discretion is to be exercised." [235-1] at
168. Before approving any conditional-use application, the Mayor and Board "must

make written findings . . . that the granting of the conditional use will not adversely affect the public interest." *Id.* at 169; *see also, e.g., id.* ("shall not be detrimental to the public health, safety, or general welfare"); *id.* at 170 ("shall not be detrimental to the economic welfare of the city"); *id.* at 18 ("would . . . promote the public health, safety, morals, or general welfare of the City and would not adversely affect adjacent properties").[14] Under this ordinance,[15] the denial was a legislative act.

In any event, the record itself shows that denying Brookwood's application was rationally related to many legitimate government interests. *FM Props.*, 93 F.3d at 174. The Court discusses just a few: avoiding overconcentration, conserving property values, and requiring owner authorization of conditional-use applications.

First, denying Brookwood's application was rationally related to avoiding overconcentration of storage facilities. Avoiding oversaturation is a legitimate government interest. *See* [241] at 7–8 & n.3 (collecting cases); *see also, e.g.*, Hart Pres. [230-16] at 1 (explaining impacts of overconcentration). Brookwood does not argue otherwise. While Brookwood does argue that Ridgeland's concern about that interest was "irrational" here (*see* [237] at 12–13, 23, 28), that issue is "at least

---

[14] Brookwood's complaints omitted the ordinance's references to "discretion" and the "public interest." *See* [1]; [16]; [58]. At the motion-to-dismiss stage, the Court thus held that "denial of Brookwood's conditional use permit could be characterized as an adjudicative action because it affects just one party and not the community at large." [57] at 11; *see also* [70] at 13. But given the provisions that Brookwood omitted, this decision was legislative.

[15] The Fifth Circuit has "not categorically said that building permit decisions" are legislative. *Bush*, 454 F. App'x at 276; *see also Vineyard Invs., LLC v. City of Madison*, 440 F. App'x 310, 314 (5th Cir. 2011). This Court does not categorically say so, either. It holds only that, under this ordinance, the conditional-use decision was legislative. Practically, the distinction is of "minimal" significance here. *Bush*, 454 F. App'x at 276. Even under the adjudicative model, "nothing requires proof of *the*, as distinguished from *a*, basis of decision." *Shelton*, 780 F.2d at 484; *see also Blue Monkey Bar*, 2011 WL 1303420, at *5.

debatable." *FM Props.*, 93 F.3d at 175.[16] Denying the application for a 130,000-gross-square-foot storage facility was rationally related to avoiding overconcentration of storage facilities.

Second, denying the application was rationally related to maintaining property values. Conservation of property values is a legitimate government interest. *Tex. Manufactured Hous. Ass'n v. City of Nederland*, 101 F.3d 1095, 1105 (5th Cir. 1996). The Resolution explained that the proposed facility could depreciate the two "neighboring hotel properties due to the fact that the use does not offer any

---

[16] Brookwood's briefing only highlights Defendants' longstanding concern that Ridgeland was "becoming the dumping place for the storage of other communities' residents' stuff and 'junk.'" [237] at 4 (quotation omitted). While Brookwood argues that the City did not undertake a study to "determine whether Ridgeland in fact had an overconcentration" of climate-controlled storage facilities (*see id.* at 28), the record teems with evidence showing that Defendants' concern was at least debatable. *See, e.g.*, Lohman Dep. [235-4] at 106:19−106:24 (noting that he prepared a map showing all existing storage facilities); [235-10] at 79:15−80:4 (Ramsey: "[N]one of us wanted to see our interstate becoming littered with self-storage facilities . . . . [I]t's certainly not a look that any of us or our constituents were wanting."); Lee Dep. [235-13] at 83:8−83:24 ("[W]e don't want all of our surrounding cities using the City of Ridgeland as a storage unit. . . . [A]ll you had to do was look around, and you could see them. Consider our land mass, population, and the number was just—we felt, and the individual aldermen, felt like it was just too many, you know. There are some places that don't have any. The city up north of us up here, they don't have any."); [235-11] at 38:2−38:10 (Smith: "All I know is that in my perception, we had far too many storage facilities . . . . [M]y constituents were saying, 'Why should we have all of these here in the City of Ridgeland when Madison doesn't have any?'"); [230-16] at 1 (Hart presentation about "utilizing properties that could be used by other uses that are needed to serve public needs"); Hamlin Dep. [230-32] at 123:24−124:1 ("[J]ust go around town. . . . [W]e have a plethora of these things."); [231] at 17 n.15, 24 (noting that Brookwood produced appraisal showing that Jackson area is "Over-Supplied").

On the other side of the ledger, Brookwood offers only its own employee's testimony that market rates were high. [237] at 23−24 n.18. But that employee's market study was "very hyperlocal," did not "rely" on data showing that Jackson was "oversupplied," was not based on an appraisal, did not account for a storage facility within a couple thousand feet of Brookwood's proposed site, and "extremely discount[ed]" certain types of storage facilities. *See* [235-23] at 160:14−160:17; Piper Dep. Vol. II [235-24] at 226:11−226:13, 256:24−259:18, 298:9−300:25. The oversaturation issue was at least debatable.

20

supporting needs for visitors." [236-13] at 3; *see also* [237] at 13 n.13 (proposed facility was "between two hotels on a narrow island of land"). Ridgeland's concern was "at least debatable." *FM Props.*, 93 F.3d at 175.[17]

And third, denying Brookwood's application was rationally related to requiring owner authorization of conditional-use applications. Brookwood admits that this could have been "a legitimate concern of Defendants." [237] at 24; *see also* [236-14] at 54 (Brookwood's expert agreeing that requiring owner's authority "does help to indicate that . . . the owner is aware or is in some kind of agreement with the application before the City"). Yet Brookwood did not provide the necessary authority to act on the owner's behalf. *See supra*, pp. 9−10.

In the end, Brookwood changes tack. It submits: "At bottom, the Court is confronted with conflicting versions as to why Defendants denied Brookwood's petition, and which version to accept largely turns on witness credibility." [237] at 24.[18] That gives up the game. By tacitly admitting that the record supports a constitutionally sound "version" of events, Brookwood all but concedes that it loses under rational-basis review.

---

[17] *See, e.g.*, Hart Dep. [235-3] at 137:4−137:6 ("[T]here's not a lot of people that need a storage facility next to a hotel."); [235-10] at 84:23−85:1 (Ramsey: "would have a negative impact on the marketability of hotel rooms adjacent to a self-storage facility"); Holder Dep. [235-14] at 96:11−96:13 ("[I]f I was staying at a hotel, a storage facility wouldn't benefit me whatsoever."); [236-14] at 126:2−127:17 (Brookwood's expert: "You use a judgment call [to assess potential depreciation]. . . . Ultimately, it's going to come down to the Board.").

[18] Brookwood argues that the rational-basis determination turns on credibility judgments, making it "the jury's 'exclusive province.'" [237] at 24−25. But Brookwood cites two Title VII cases for that proposition. *See id.* That reliance is misplaced: "Whether a particular zoning action has the requisite rational relationship to a legitimate government interest is a question of law to be decided by the court." *FM Props.*, 93 F.3d at 172 n.6; *see also Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2006) (cited at [237] at 14).

In sum, both the moratorium and the application denial were "rationally related to a legitimate government interest." *FM Props.*, 93 F.3d at 174. For that reason, too, summary judgment is proper.

### B. Equal Protection

Brookwood next raises a class-of-one claim under the Equal Protection Clause. *See* [58] ¶¶ 100–09; [237] at 29. It asserts that Ridgeland treated Brookwood's application less favorably than StorageMax's. *See id.*

The Equal Protection Clause is "concerned with arbitrary government classification." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602 (2008). Generally, plaintiffs allege that they were "arbitrarily classified as members of an identifiable group." *Id.* at 601 (quotation omitted). But "in some circumstances," a plaintiff may instead allege that it was "singled out as a so-called 'class of one.'" *Id.* A class-of-one plaintiff "must show that (1) [it] was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment." *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012).

Assuming without deciding that Brookwood's class-of-one claim is cognizable,[19] it fails for two reasons. Brookwood cannot identify a similarly situated comparator. And even if it could, Brookwood would lose under rational-basis review.

---

[19] Class-of-one claims typically require a "clear standard against which departures, even for a single plaintiff, [may] be readily assessed." *Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 587 (5th Cir. 2016) (quotation omitted); *see also Engquist*, 553 U.S. at 602–03 (emphasizing that there was "no indication in *Olech* that the zoning board was exercising discretionary authority based on subjective, individualized determinations," "however typical such determinations may be as a general zoning matter"). Yet the Mayor and Board must decide whether a proposed conditional use would serve the "public

### 1. Similarly Situated

"The legal requirement that a class-of-one plaintiff's comparators be 'similarly situated' is not a requirement susceptible to rigid, mechanical application." *Id.* Instead, it turns on the "full variety" of case-specific factors that "an objectively reasonable decisionmaker would have found relevant." *Id.* at 234 (cleaned up). The plaintiff and comparator must be "in all relevant respects alike." *Tex. Ent. Ass'n v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021) (quotation omitted).[20]

For at least two reasons, Brookwood and StorageMax are not similarly situated. First, Brookwood concedes a "zoning district distinction." [237] at 31. That is, Brookwood and StorageMax are in "different zoning districts." *Id.* The different districts have different purposes. StorageMax's district is "for light industrial uses." *Id.*; *see also* [235-1] at 153. Brookwood's, by contrast, is "for highly planned developments that typically require direct [highway] access and visibility." [235-1] at 138. So StorageMax's facility comported with its district's purpose; Brookwood's proposed facility did not. An objectively reasonable decisionmaker would have found that relevant. *See Lindquist*, 669 F.3d at 234.

Seeking to reduce the "weight" of the "zoning district distinction," Brookwood offers four arguments. *See* [237] at 31−32. All are unpersuasive:

---

interest" and "general welfare." [235-1] at 169−70. That is not a clear standard. But the Court need not decide whether the claim is cognizable. In any event, it fails.

[20] *See also, e.g.*, *Craig v. City of Yazoo City*, 984 F. Supp. 2d 616, 623 (S.D. Miss. 2013) ("The 'similarly situated' requirement must be enforced with particular rigor in the land-use context."); *Rayford v. Crain*, No. 19-CV-12348, 2020 WL 587927, at *3 (E.D. La. Feb. 6, 2020) (stating that class-of-one claim requires "extremely high degree of similarity").

- Brookwood says that "the different zoning districts did not matter to the City Planner, who told Brookwood that Defendants themselves would use Storage Max as a comparator." *Id.* at 31. Not so. The City Planner's email said only that decisionmakers would compare Brookwood to StorageMax's "level of architecture." [236-18] at 5. That offers no support for the assertion that zoning districts "did not matter." *See also* [235-1] at 167 ("[T]his Zoning Ordinance is based upon the division of the community into districts.").

- Brookwood offers its expert's statement that the "character of the area" around Brookwood's site is "tilted more toward light industrial." [237] at 32. That is misleading. The expert "supported" that statement by pointing to *other* zoning districts, not Brookwood's zoning district. *See* [236-16] at 11.

- Brookwood notes that climate-controlled storage facilities were a "permitted" conditional use in the Highway Commercial District. [237] at 31. But the question is not whether they were "permitted" in each district. It is whether an objectively reasonable decisionmaker would have found the "zoning district distinction" relevant. *Lindquist*, 669 F.3d at 234. It would have.

- Brookwood states that StorageMax's property "required a rezoning." [237] at 31. That undercuts Brookwood's argument. As Defendants' opening brief explains: "In order to achieve this rezoning, StorageMax had the obligation of showing a substantial change in the character of the neighborhood and that the public interest required the change. This they did. This Brookwood did not do." [231] at 18; *see also* [236-19] at 4. Brookwood offers no response.

In short, the "zoning district distinction" would make a difference to an objectively reasonable decisionmaker.

Brookwood identifies a second relevant distinction: location. Brookwood acknowledges that its proposed facility was "between two hotels on a narrow island of land between I-55 and Highway 51." [237] at 13 n.13. StorageMax's was at the end of a narrow, one-lane road leading to dilapidated homes. [231] at 15. A facility there, Brookwood admits, "resulted in less blight." [237] at 33. An objectively reasonable decisionmaker would find the difference in location relevant.

Because Brookwood has failed to carry its burden of identifying a similarly situated comparator, its equal-protection claim fails.

2.  Rational Basis

Rational-basis review under the Equal Protection Clause is a "paradigm of judicial restraint." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993). A classification comes to the Court with a "strong presumption of validity." *Id.* To overcome that presumption, the challenger must carry a "heavy burden." *Lindquist*, 525 F.3d at 387. The challenger must "negativ[e] any reasonably conceivable state of facts that could provide a rational basis" for differential treatment. *Id.* (quotation omitted). It is "entirely irrelevant" whether that reason "actually motivated" the decisionmaker. *Beach Commc'ns*, 508 U.S. at 315. And that reason "may be based on rational speculation unsupported by evidence or empirical data." *Id.*

Even if Brookwood could identify a similarly situated comparator—it cannot—it would fail to carry its "heavy burden" under rational-basis review. *Lindquist*, 525 F.3d at 387. Brookwood has failed to negative numerous "reasonably conceivable" sets of facts providing a rational basis for the distinction. *Id.* The three bases discussed above apply here, too.

First, the distinction was rationally related to avoiding overconcentration. *See supra*, pp. 19–20. When StorageMax applied, there was just one storage facility in Ridgeland west of I-55. [236-19] at 4. When Brookwood applied, by contrast, StorageMax's large facility was "about one mile" away from Brookwood's proposed site. [237] at 30. Ridgeland could rationally conclude that an additional 130,000-gross-square-foot, four-story facility would result in oversaturation.

Second, the distinction was rationally related to maintaining property values. *See supra*, pp. 20–21. Again, StorageMax's facility was at the end of a narrow, one-lane road leading to dilapidated homes. [231] at 15. Brookwood's proposed facility was "between two hotels on a narrow island of land between I-55 and Highway 51." [237] at 13 n.13. Ridgeland could rationally conclude that Brookwood's proposed facility would depreciate neighboring properties, while StorageMax's facility would not. Brookwood objects that Ridgeland failed to produce a study showing whether climate-controlled storage facilities "actually have negative impacts" on hotels. *Id.* at 12–13. But Ridgeland could rationally speculate that transient hotel guests are not wanting for long-term storage. *See Beach Commc'ns*, 508 U.S. at 315.

And third, the distinction was rationally related to requiring owner authorization of applications. *See supra*, p. 21. StorageMax's application included the necessary written authority. *See* [236-19] at 9 ("I . . . hereby consent for [StorageMax's representative] to represent myself and my companies in the request for Rezoning and Conditional Use hearing in the City of Ridgeland."). Brookwood's application did not. *See supra*, pp. 9–10.

Brookwood has failed to "negativ[e] any reasonably conceivable state of facts that could provide a rational basis" for differential treatment. *Lindquist*, 525 F.3d at 387 (quotation omitted). That, too, warrants summary judgment.

### C. Procedural Due Process

Brookwood raises three procedural-due-process claims. [58] ¶¶ 110–38. They arise from the moratorium, ordinance amendment, and application denial. *See id.*

In the zoning context, a procedural-due-process claim has three elements: (1) adjudicative, rather than legislative or quasi-legislative, government action; (2) deprivation of a constitutionally protected property interest; and (3) inadequate state process. *See Jackson Ct. Condos.*, 874 F.2d at 1074 (citing *Cnty. Line Joint Venture*, 839 F.2d at 1144). Each claim fails to satisfy each element.

### 1.  Adjudicative or Legislative Act

"[I]t is well established law that once an action is characterized as legislative, procedural due process requirements do not apply." *Id.* "[W]here a zoning decision has been made by an elected body," the Fifth Circuit has "characterized the action as legislative or 'quasi-legislative,'" "negating procedural due process claims." *Id.*

As discussed, imposing the moratorium and denying Brookwood's application were legislative acts. *See supra*, pp. 16–19. So was adopting the generally applicable zoning amendment. [57] at 11; [70] at 13. All three claims thus fail at the first element, which itself makes summary judgment proper.

### 2.  Property Interest

A procedural-due-process claim requires a protected property interest. *Jackson Ct. Condos.*, 874 F.2d at 1074 (citing *Cnty. Line Joint Venture*, 839 F.2d at 1145). In claiming one, Brookwood "incorporates" its arguments based on Ridgeland's ordinance and Mississippi law. [237] at 15 n.14. As discussed, those arguments fail: Brookwood lacks a constitutionally protected property interest in "receiving a conditional use permit." *See supra*, pp. 8–15; [237] at 15. For that reason, too, summary judgment is proper as to all three claims.

### 3. Adequacy of Process

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation omitted). The specific requirements turn on three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Even if the Due Process Clause applied, Brookwood received all the process it was due. Brookwood's sole argument to the contrary relates to its application denial. *See* [237] at 25–28.[21] But Brookwood filed a 79-page application, participated in two public hearings before the Zoning Board, presented its proposal to the Architectural Review Board, and received a timely decision from the Mayor and Board. *See, e.g.*, [236-21]; [236-5] at 2–4; [236-8] at 2–3; [236-11] at 2; [230-19]. Brookwood then exercised its right to appeal in state court. *See* [235-1] at 192; [235-23] at 114:2–114:7; [236-14] at 90:7–91:5.

Brookwood nonetheless presses two arguments, which are both unavailing. First, Brookwood submits that its process was not "meaningful," because it did not receive advance notice of the Mayor and Board's "supposed concerns" and an

---

[21] Brookwood does not press any inadequate-process argument related to its other two claims, arising from the moratorium and ordinance amendment. *See* [237] at 25–28.

opportunity to respond to them. *See* [237] at 25–28. But Brookwood notes that Defendants "delegated responsibility for the public hearing to the Zoning Board." *Id.* at 27; *see also* Miss. Code. Ann. § 17-1-13. Brookwood cites no authority for the proposition that the "final decisionmaker on the petition" must conduct a hearing, and it does not confront the substantial "fiscal and administrative burdens" that additional hearings would have on the Mayor of Ridgeland and the Board of Aldermen. [237] at 28 n.19; *Mathews*, 424 U.S. at 335. In any event, Brookwood had an opportunity to address the Mayor and Board's "supposed concerns" in state court, but it chose to abandon its appeal. *See, e.g.*, *Cnty. Line Joint Venture*, 839 F.2d at 1147 ("If County Line obtained no relief from the zoning board, it could appeal the matter in state court."); *G & H Dev., LLC v. Benton-Par. Metro. Plan. Comm'n*, 641 F. App'x 354, 358 (5th Cir. 2016) ("That G & H decided to forgo its right . . . to appeal the Board of Adjustment's decision in state court only strengthens our conclusion that any deprivation that occurred was not erroneous.").

Second, Brookwood contends that the Mayor and Board were not "fair and impartial," because their minds were "irrevocably closed" to the application. [237] at 25–28. But "bias by an adjudicator is not lightly established." *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1052 (5th Cir. 1997). Courts "will not infer bias when no evidence is presented to indicate that a hearing officer's mind was irrevocably closed." *Baran v. Port of Beaumont Navigation Dist. of Jefferson Cnty.*, 57 F.3d 436, 446 (5th Cir. 1995). To establish that bias, Brookwood "must overcome two strong presumptions: (1) the presumption of honesty and integrity of the adjudicators; and

(2) the presumption that those making decisions affecting the public are doing so in the public interest." *Valley*, 118 F.3d at 1052−53.

Brookwood's evidence is far from overcoming those "strong presumptions." *Id.* Citing Smith's deposition testimony, Brookwood represents that Defendants "had not received a Zoning packet containing an option to grant the petition." [237] at 27. Smith did not say that. *See* [235-11] at 78:11−78:20. And Defendants did, in fact, receive a packet with that option. *See* Zoning Packet [241-7].[22] Next, Brookwood repeatedly represents—without citation—that Defendants "did not consider the record developed during the Zoning Board's February 4, 2021 public hearing." [237] at 27. In fact, Defendants did receive an outline of Brookwood's presentation at that hearing. *See* [241-3]; *see also* [237] at 9 (Brookwood noting that Defendants received a "document with neatly typed responses" from the City Attorney). Brookwood has failed to establish that any decisionmaker's mind was "irrevocably closed." *Valley*, 118 F.3d at 1052.

So even if Ridgeland's action was adjudicative (it was not), and even if Brookwood had a constitutionally protected interest (it does not), Brookwood received all the process it was due. Summary judgment is proper as to all three procedural-due-process claims.

---

[22] *See also* [235-10] at 57:3−57:22 ("This was the agenda packet . . . . It also includes an ordinance approving the Petition and Application for Conditional Use Permit.").

IV.    Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court GRANTS Defendants' [230] Motion for Summary Judgment. The Court DENIES as moot Plaintiff's [228] Motion to Exclude and [238] Motion to Strike. And the Court DISMISSES this case with prejudice. The Court will issue a separate final judgment.

SO ORDERED, this 8th day of December, 2023.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE